IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AMY G. MASSEY,                          :
                                        :
     Plaintiff,                         :
                                        :
vs.                                     :
                                        :   CIVIL ACTION 13-0178-M
CAROLYN W. COLVIN,                      :
Social Security Commissioner,           :
                                        :
     Defendant.                         :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 20). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 28). Oral argument was waived in this action (Doc. 27). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Massey was thirty-nine years old, had completed a high school education and training to be a certified nurse assistant (Tr. 49), and had previous work experience as an accounts payable clerk, insurance clerk, paralegal, billing clerk, bank teller, office manager, personnel clerk, administrative secretary, medical clerk, fast food worker, and office manager (Tr. 75-76). In claiming benefits, Plaintiff alleges disability due to cardiomegaly, a history of a pacemaker implanted in September 2010, and degenerative disc disease of the cervical spine (Doc. 20 Fact Sheet).

The Plaintiff filed a protective application for disability insurance benefits on April 28, 2009[1] (Tr. 174-75; *see* Tr. 22).

---

[1]Plaintiff has asserted that although she also filed an application for Supplemental Security Income, that application was not processed herein (Doc. 20, p. 1 n.1; *see also* Tr. 165-73).

2

Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she had severe impairments, Massey was capable of returning to many of the jobs that she had performed in the past (Tr. 22-34). Plaintiff requested review of the hearing decision (Tr. 16-17) by the Appeals Council, but it was denied (Tr. 8-12); the Appeals Council later set that decision aside but, again, denied review, finding no basis for changing the ALJ's decision (Tr. 1-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Massey alleges that: (1) The ALJ did not properly consider the opinions and conclusions of her treating physician; (2) the ALJ's decision regarding her residual functional capacity (hereinafter *RFC*) was incorrect; and (3) the Appeals Council did not properly consider the evidence submitted to it (Doc. 20). Defendant has responded to—and denies—these claims (Doc. 23). The relevant evidence of record follows.[2]

On April 9, 2009, Massey was seen at St. Joseph's Hospital of Atlanta for administration of a renal ultrasound that was negative (Tr. 366; *see generally* Tr. 363-74). On May 9, she was examined as part of a follow-up for a heart transplant eleven years earlier; she complained of fatigue, shortness of breath,

---

[2]Massey asserts disability as of April 21, 2009 (Tr. 174), so evidence preceding that date or that does not directly relate to the claims raised herein will not be discussed.

3

and occasional edema (Tr. 363-65). It was noted that she probably had diastolic dysfunction, based on a heart catheterization four months earlier, though there was evidence of normal left ventricular function.

On May 27, 2009, Dr. Donald Jansen, a Cardiologist, completed a questionnaire in which he stated that Massey had undergone an orthotropic heart transplant eleven years earlier and that she probably suffered from diastolic dysfunction with associated shortness of breath and fatigue (Tr. 614-15). The Cardiologist stated that her left ventricular function was preserved; she also had a history of renal insufficiency with associated hyperkalemia. Jansen noted that Plaintiff became fatigued and experienced shortness of breath with minimal to moderate activity; he expressed the opinion that she was disabled and had been since May 7, 2009.

On July 1, 2009, Dr. Robert H. Heilpern, a Pediatrician, reviewed the records in existence at that time and determined, without benefit of a physical examination, that Massey had the ability to lift and carry twenty pounds occasionally and ten pounds frequently, stand and sit, each, for six hours during an eight-hour day; she was also capable of unlimited pushing and pulling of arm and leg controls (Tr. 378-85, 454). Though she could never climb a ladder, rope, or scaffold, she could occasionally climb a ramp or stairs, and could frequently

balance, stoop, kneel, crouch, and crawl. Plaintiff should avoid all exposure to machinery and heights and concentrated exposure to extreme heat and cold, vibration, fumes, odors, dusts, gases, and poor ventilation; she could, however, have unlimited exposure to wetness, humidity, and noise.

A nuclear cardiac scan on December 23, 2009 conducted by Dr. Donald Jansen revealed no arrhythmia or significant ischemia though there was moderate breast attenuation (Tr. 395). The study was considered normal. An echocardiogram was within normal limits though there was mild mitral and moderate tricuspid regurgitation; there were no changes from the study completed one year earlier (Tr. 396).

On January 13, 2010, Dr. Brandon Cantrell, Orthopedic Surgeon, examined Massey for a history of pain in the left hip and lumbar back for the previous nine months (Tr. 399-401). The doctor noted mild tenderness to palpation at the left SI joint and that the lumbar spine was mildly tender at the left gluteus medius; hip rotation did not increase discomfort. She also had some generalized increased tone in the lower extremity; she was also hyper reflexive at the patellar and Achilles tendons. No clonus was noted. Imaging of the lumbar spine showed normal disc space height and vertebral body height without acute boney change; imaging of the pelvis was normal, showing no abnormality or arthritis in either hip. Cantrell prescribed physical

therapy and Vicodin.[3]

On January 27, 2010, Dr. Thomas L. Dopson, an Orthopaedic, examined Massey and noted good range of motion of the cervical spine, shoulders, elbows, hips, and knees as well as 5/5 motor strength (Tr. 406-11). There were a few trigger points in the mid lumbar region; ankle dorsiflexion, plantar flexion, knee flexion and extension were all 5/5. Straight leg raising was negative; there was tenderness over the quadriceps origin on the left hip. X-rays of the cervical spine showed multilevel degenerative changes, most significantly at C5-C6, with calcification of the disk and small posterior osteophyte; Dopson considered the degeneration to be moderately severe. Plaintiff also had hand swelling and left hip discomfort of undetermined etiology; he prescribed Lortab.[4]

Records demonstrate that Massey underwent physical therapy from January 13 through March 1, 2010 (Tr. 412-27). In the initial evaluation, the therapist noted that Plaintiff was unable to stand, sit, or walk without pain; she had difficulty shifting "into the left hip during stance phase of gait," causing significant antalgia (Tr. 415). Massey reported

---

[3]*Vicodin* is a class three narcotic used "for the relief of moderate to moderately severe pain." *Physician's Desk Reference* 1366-67 (52nd ed. 1998).

[4]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

6

significant improvement on February 3; twelve days later, she was doing better (Tr. 419, 421). On her last treatment date, Plaintiff noted that her groin pain was gone, but her left hip was hurting (Tr. 423); new exercises were added to her daily regimen (Tr. 424-25).

On April 1, 2010, Dr. Dopson found Massey to have good motion of the spine with some paracervical trigger points; reflexes were 2+ symmetrical in the upper extremities (Tr. 435-36). Motor strength was 5/5; there was good motion in both shoulders. Lower extremities were 2+ symmetrical in the knee and ankle with good motion in the hips; motor strength was 5/5 in the lower extremities throughout. Plaintiff had restriction of motion in the left hip with pain. Overall, Massey's back was better. The Lortab was discontinued; she could engage in activity as tolerated.

Dr. Mark A. Senger, Doctor of Osteopathy, examined Plaintiff for the first time on April 13, 2010, noting full range of motion (hereinafter *ROM*) in the spine (Tr. 441-43). Muscle strength was 5/5 bilaterally; she walked with normal gait without assistance. The doctor noted 1+ pitting edema to the bilateral calves; there was no back tenderness. Cranial nerves were grossly intact.

On June 8, 2010, Dr. R. Paul Crank, Jr., reviewed the records in existence at that time and determined, without

7

benefit of a physical examination, that Massey was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently and could sit or stand for six hours, each, during an eight-hour workday (Tr. 446-53). She would have no limitations as far as pushing and pulling of arm or leg controls. The doctor further indicated that Plaintiff would never be able to crawl, could occasionally climb a ladder, rope, or scaffolds, but could frequently climb a ramp or stairs, balance, stoop, kneel, and crouch; she would be limited in her ability to reach, but had unlimited ability to handle, finger, and feel. Crank further indicated that Plaintiff should avoid all exposure to extreme heat or cold, avoid concentrated exposure to machinery and heights, but had no limitations regarding wetness, humidity, noise, vibration, fumes, odors, dusts, gases, or poor ventilation.

On June 24, 2010, Dr. Dopson noted Massey's complaints of worsening symptoms, causing occipital headaches; she denied radicular symptoms into the upper extremities as well as numbness, tingling, or weakness (Tr. 493-94). She had normal heel-to-toe gait with unlabored respiration. Plaintiff had a few trigger points in the bilateral trapezius and paracervical region; ROM of the head and neck were intact, though there was bilateral discomfort on rotation. In the upper extremities, there was no tenderness, ROM was intact, and strength was 5/5.

The pelvis and lower extremities demonstrated no atrophy, asymmetry, or tenderness; strength was 5/5.

On July 11, 2010, Plaintiff went to Perry Hospital for what was described as a near syncope episode; bed rest was prescribed (Tr. 585; *see generally* Tr. 584-98). An EKG and chest ray were normal; Plaintiff had full ROM without edema. Massey was in no pain at discharge. On August 11, 2010, Massey went to Perry Hospital, after passing out and experiencing severe shortness of breath (Tr. 581; *see generally* 570-83). A chest x-ray showed mild cardiomegaly and pulmonary vascular congestion suspicious for early congestive failure or volume overload. She was in no pain at discharge; the diagnosis was a syncope episode. Nine days later, Plaintiff returned for mild shortness of breath problems; she had normal sinus rhythms and full ROM with no edema (Tr. 550-69).

An echocardiogram, performed on August 12, 2010, showed normal left ventricular size and function, biatrial enlargement, mild aortic insufficiency, mild mitral regurgitation, and moderate tricuspid regurgitation (Tr. 488). Chest x-rays, taken several weeks later, demonstrated no acute pathology (Tr. 483).

Records from St. Joseph's Hospital of Atlanta show that a left and right heart catheterization was performed on August 20, 2010, demonstrating no angiographic evidence for coronary artery disease (Tr. 606; *see generally* Tr. 600-12). Global left

9

ventricular function was normal; the right heart catheterization was normal. Massey underwent surgery for placement of a permanent pacemaker (Tr. 601).

On September 20, 2010, Marcus Parker, P.A. to Senger, noted that Massey did not have shortness of breath, chest pain, fatigue, leg edema, or abdominal pain; she stated that her heart felt like it was racing (Tr. 475-77). The P.A. noted that ambulation was normal and her heart rhythm was regular with no murmurs or clicks. No motor or sensory deficits were appreciated.

On September 27, 2010, Osteopath Senger completed a questionnaire in which he indicated that Massey could lift and carry less than five pounds occasionally and could lift no amount frequently (Tr. 464-67). He indicated that she could not stand for as much as two hours during the day; though stating that Plaintiff's ability to sit was affected by her impairments, the doctor failed to say how. She could use neither her arms nor legs for pushing or pulling movements. Massey would be able to climb, balance, kneel, crouch, crawl, or stoop on only an occasional basis; her abilities to reach, handle, finger, and feel were unlimited. On that same date, Senger completed another questionnaire in which he indicated that Plaintiff was disabled under Listing 4.05, recurrent arrhythmias, and had been from approximately April 13, 2009 (Tr. 620-21).

On November 17, 2010, Dr. Michael H. Hoskins noted that Plaintiff was in no acute distress; he did hear a soft systolic murmur at the left lower sternal border consistent with tricuspid regurgitation (Tr. 543-46). Massey's pacemaker was functioning normally; the doctor increased her rate responses to help with her fatigue. Plaintiff had two episodes of atrial tachycardia, each lasting about five seconds, but Hoskins did not think they required specific therapy. An echocardiogram, conducted on February 1, 2011, was essentially normal, though it did disclose mild tricuspid regurgitation and trace mitral valve regurgitation (Tr. 539-40). On April 6, Hoskins reiterated his findings from his previous examination that there was nothing objective to explain her symptoms; a stress test on that date "strongly suggest[ed] that her fatigue [was] from deconditioning and not because of cardiac insufficiency" (Tr. 527; *see generally* Tr. 526-27). On July 25, 2011, Dr. Hoskins noted that Massey was, generally, in no distress; he noted that there was no objective electrophysiological data to explain her symptoms (Tr. 512-13). The doctor thought Plaintiff would benefit from a structured exercise program. This concludes the relevant evidence of record.

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians. Massey specifically refers

to the conclusions of Osteopath Senger (Doc. 20, pp. 4-14).  It
should be noted that "although the opinion of an examining
physician is generally entitled to more weight than the opinion
of a non-examining physician, the ALJ is free to reject the
opinion of any physician when the evidence supports a contrary
conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir.
1981);[5] *see also* 20 C.F.R. § 404.1527 (2013).

In her determination, the ALJ summarized the evidence of
record, but discounted Dr. Senger's opinion that Massey was
disabled and was so limited in her physical abilities (Tr. 30).
The ALJ's reasons were that doctor indicated that she met a
cardiac listing and Senger was an internist rather than a
specialist; the ALJ further noted that the medical records
demonstrated that her cardiac condition was stable.  The ALJ
further noted that the doctor had only treated Massey for a
period of five months at the time of his diagnosis and at the
time of his diagnosis, Plaintiff's examination "showed no
tenderness of the back, full range of motion of the spine, and
normal 5/5 muscle strength" which was inconsistent with the
extreme limitations he had suggested.  The Court finds
evidentiary support for the ALJ's conclusions, noting that

---

[5]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Massey has not directed this Court's attention to any other medical evidence of record, that was available for the ALJ's consideration, that supports Senger's conclusions.

The Court further notes that one component of Massey's argument with regard to this claim relies on medical evidence not before the ALJ (*see* Doc. 20, pp. 5-7, 12-13, 14). The Court finds it inappropriate to address the new evidence with regard to this claim at this time and will take it up later.

Massey also decries the ALJ's reliance on the opinions from two non-examining physicians who both found her capable of performing light work (Doc. 20, pp. 7-11). The Court notes, however, that the ALJ also gave great weight to the conclusions of Dr. Hoskins who, on several different occasions, noted that there was no objective evidence of cardiac insufficiency to explain her symptoms; he suggested that the problem was because of Massey's poor deconditioning. The Court finds Plaintiff's insinuation that Hoskins is somehow less qualified to speak to her abilities than Internist Senger unconvincing (*see* Doc. 20, p. 12) (Dr. Hoskins is "an electrophysiologist, dealing with a specific and highly specialized area of medicine within the broad field of cardiology").

The Court finds no merit in Plaintiff's claim regarding the ALJ's failure to properly consider the conclusions of her treating physician. The Court finds that the ALJ provided

cogent reasons, supported by the evidence, for rejecting Senger's conclusions.

Massey also claims that the ALJ's decision regarding her RFC was incorrect (Doc. 20, p. 7). The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3).

The ALJ determined that Plaintiff was capable of performing a reduced range of light work (Tr. 26). The ALJ went on to find that many of the jobs that Massey had previously performed fell within this RFC classification or lower (Tr. 32); additionally, the ALJ listed other jobs that Plaintiff would be capable of performing (Tr. 33).

The Court notes that the only evidence contradicting the ALJ's RFC comes from Dr. Senger and Plaintiff herself. The Court found substantial support for the ALJ's rejection of Dr. Senger's conclusions. The Court would further note that the ALJ rejected Massey's testimony regarding her limitations and abilities (Tr. 27, 30-32), a conclusion not challenged by Plaintiff in this action. The Court finds substantial support for the ALJ's conclusions regarding Massey's RFC.

Finally, Plaintiff claims that the Appeals Council did not

14

properly consider the evidence submitted to it (Doc. 20, pp. 14-20). The evidence in dispute can be found at Tr. 642-775.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision. To make that determination, the Court considers whether the claimant "establish[ed] that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the

Appeals Council denied review of the additional evidence (Tr. 1-7). As Massey is claiming that the Appeals Council did not properly consider the new evidence, this Court will examine it under the *Caulder* analysis.

The Court notes that although more than one hundred pages of new evidence were presented for the Appeals Council's review, Plaintiff's arguments herein relate to only a small portion of it (Doc. 20, pp. 14-15). The Court also notes that Massey has not made the argument that this evidence "relates to the period on or before the date of the [ALJ's] hearing decision" as required in 20 C.F.R. § 404.976(b).

Plaintiff does argue that some of the evidence is similar to evidence presented by Dr. Senger (Doc. 20, pp. 16-17). Massey specifically refers to limitations suggested by Dr. Kenneth Burnham, her new cardiologist. Burnham indicated that Plaintiff could sit for two hours, and stand or walk for one hour, at a time and could sit for six hours, and stand or walk for one hour, during an eight-hour workday (Tr. 760). Though this compares favorably to Senger's opinion (*see* Tr. 465), the similarity ends there. Senger concluded that Massey could lift or carry less than five pounds occasionally and no amount on a frequent basis (Tr. 464) while Dr. Burnham indicated that Plaintiff was capable of lifting five pounds continuously, twenty pounds frequently, and twenty-five pounds occasionally

and could carry five pounds continuously, ten pounds frequently, and twenty-five pounds occasionally (Tr. 760). This ability to lift and carry falls squarely within the definition of light work.[6] Though Burnham's assessment of Massey's ability to stand and walk would seem to not comport with the definition of a full range of light work, the ALJ did not find that she could perform a full range of light work. What the ALJ found was that Plaintiff could perform eight of her past relevant jobs, seven of which were performed at the sedentary level (Tr. 32). Massey has not demonstrated, even with the new evidence, that she is incapable of performing her past relevant work. Therefore, the Court finds that Plaintiff has not demonstrated that the Appeals Council committed error in not considering the newly-submitted evidence as she has failed to demonstrate a reasonable possibility that it would change the ALJ's conclusions.

Massey has raised three different claims in bringing this action. All are without merit. Upon consideration of the

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (2013).

entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be **DISMISSED,** and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Amy G. Massey.

DONE this 21st day of January, 2014.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE